**Carl E. JOHNSON, Respondent,**

v.

**IDENTIFICATION INC., d/b/a Central Sign, Appellant.**

**No. 37166.**

Missouri Court of Appeals, Western District.

Sept. 9, 1986.

David E. Martin (argued), Kansas City, for appellant.

Gordon D. Gee, Lynne C. Kaiser (argued), Kansas City, for respondent.

Before DIXON, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

Defendant Identification, Inc., appeals from a judgment for plaintiff Carl E. Johnson in an action to recover damages for breach of an oral contract for the sale of a

Pexto power squaring shear. The jury awarded plaintiff damages in the amount of $12,287.00. Defendant in its appeal asserts that (1) the evidence failed to support plaintiff's claim that defendant intended to include the Bertsch Shear as part of its agreement and thus the submission of plaintiff's Instruction No. 7, which included this as an element of plaintiff's claim, was erroneous and prejudicial, and (2) that defendant was denied the right to present evidence of plaintiff's abandoned claim in Count II of his petition to be used as an admission against plaintiff's interest and to impeach plaintiff's testimony. We affirm the judgment.

The evidence was sufficient, if believed, to establish the following facts: Plaintiff Carl E. Johnson is a dealer in new and used metal working equipment. At the time in question, William Maidhof was the owner and president of defendant Identification, Inc.

In October, 1981, Carl Johnson agreed to buy for defendant a certain Pexto power squaring shear, which Mr. Maidhof had seen and personally tested. Defendant was to pay plaintiff $7,500, his cost, plus a twenty-five percent commission and $300 for the hauling and delivery of the shear. In addition, when Mr. Johnson asked Mr. Maidhof what he planned to do with defendant's old Bertsch Shear, he said that Johnson could have it as part of the deal.

Mr. Johnson bought the shear and delivered and installed it in defendant's plant under the eyes of defendant's employees. At that time, nothing on the machine was broken. The placement of the machine in the plant revealed that its squaring arm on the left side would block the pathway of the workmen. At the behest of defendant's man, plaintiff agreed to change the squaring arm. He removed it and took it to his shop to revamp it so that it would work on the right side.

In the meanwhile, defendant's employees electrically wired the shear, but four days after its installation, Mr. Maidhof's son called to say that the shear "fell apart" when he punched the switch. Mr. Johnson went to defendant's plant and found that it had been incorrectly wired to run backwards and that all the clutches and the engaging lever, were bent and broken. Again at defendant's request, although defendant's employee had broken the lever, plaintiff Johnson agreed to fix the machine and to replace the lever. He could not find a new lever, however, so he told Mr. Maidhof that he would "brace"[1] and pin the broken lever, which he did.

When the lever had been repaired, plaintiff and two of his workmen returned to defendant's plant and started to reassemble the machine, but Mr. Johnson had to return to his shop to get a test light to use in the reassembly. Upon returning to defendant's plant, he found that Mr. Maidhof had ejected his two workmen from the plant. When Mr. Johnson went to the defendant's office for an explanation, Mr. Maidhof refused to pay for the shear and told plaintiff, "By damaging it, it's your machine, and you'll have to sue me for it."

Mr. Johnson then returned to the plant to retrieve his workman's jacket and found that, after his workmen had been ejected, defendant's forklift operator had moved and dropped the shear, in the process raising it so high above the floor that when it fell it "dug a lot of concrete out of the floor." The machine had fallen on its back, which was broken and bent, and the motor and switches had broken off and the wires were all hanging loose.

Mr. Maidhof admitted that he had agreed to buy the Pexto shear for $7,500 and to pay $300 for its delivery. He also conceded that his Bertsch Shear was "in a sense" part of this deal in that he "had no use for the thing."

In his first point on appeal, defendant contends that the trial court erred in submitting plaintiff's Instruction No. 7 be-

---

**1.** He described the bracing as a welding process that required the cast iron piece itself to be pre-heated.

cause the record contained no evidence to support plaintiff's contention that defendant intended to include the Bertsch shear as part of the agreement and that the submission of an instruction not supported by evidence prejudiced defendant.

Instruction No. 7 submitted pursuant to MAI 26.06 is as follows:

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an oral agreement whereby plaintiff agreed to sell and deliver to defendant a 10–foot Pexto Power Squaring Shear and defendant agreed to pay plaintiff $7,500.00 plus a 25% commission, plus $300.00 for moving and handling costs and to give plaintiff defendant's used 10–foot Bertsch Shear, and

Second, plaintiff performed his agreement, and

Third, defendant failed to perform the agreement, and

Fourth, plaintiff was thereby damaged.

Defendant argues that the instruction required the jury to find several conjunctive elements and that the failure to find any one would require a verdict for defendant.

In determining whether plaintiff has made a submissible case, the appellate court will review the evidence in the light most favorable to the plaintiff. *Siegel v. Ellis*, 288 S.W.2d 932, 934 (Mo.1956). An appellate court must accept plaintiff's evidence as true, giving plaintiff the benefit of all favorable inferences to be drawn from the evidence and disregarding defendant's evidence except insofar as it may aid the plaintiff's case. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 586 (Mo.App.1981). Further, the jury may believe all, part or none of the testimony of any witness to the case. *Young v. Kansas City Southern Railway Co.*, 374 S.W.2d 150, 153 (Mo.1964).

■ On direct examination plaintiff testified as follows:

Q. All right. Now, in addition to the $7,500 price plus the twenty-five per-

cent commission and then $300 to haul it up, did you have any other terms to the agreement that you had with Mr. Maidhof?

A. I asked him what he was going to do with the old shear and he said, 'Hell, you can have it.'

Q. That was a quote from Mr. Maidhof?

A. That's right.

In addition to plaintiff's evidence, Mr. Maidhof made the following statements on direct examination in response to defense counsel's questions:

Q. Bill, the old Bertsch machine,—

A. Yes.

Q. —you're being sued for not turning that over. Was that part of the deal?

A. Well, yeah. In a sense. To be perfectly honest about it, I had no use for the thing. If the Pexto had been a working, operable unit, the damn thing would have been in my shop.

The foregoing testimony furnished sufficient evidence for a jury reasonably to conclude that the Bertsch shear was part of the agreement. Therefore, the trial court properly submitted Instruction No. 7.

Defendant next contends that the trial court erred in refusing to allow it to present evidence of plaintiff's abandoned claim in Count II as an admission against interest to impeach plaintiff's testimony.

At the onset of trial, plaintiff voluntarily dismissed Count II which reads, in part, as follows:

Comes now plaintiff and for Count II of his cause of action against defendant states:

. . . .

12. At the time plaintiff delivered the 10' Pexto Power Squaring Shear to defendant, plaintiff and defendant entered into an oral contract in Wyandotte County, Kansas, under the terms of which plaintiff agreed to perform certain labor on said squaring shear, including changing the squaring arm from left hand to right hand and having certain pieces rewelded, and defendant agreed to pay plain-

tiff the sum of Three Hundred Eighty and No/100 Dollars ($380.00).

Plaintiff testified that the Pexto power shear was not damaged, that "nothing was broken", when he delivered it to defendant's plant. On cross-examination, defendant attempted to use this abandoned pleading to impeach plaintiff's testimony, arguing to the trial court that the pleading "stands as a judicial admission." In its brief defendant further argues that plaintiff's testimony that the shear was in good operable condition when it arrived at defendant's plant is contradicted by his own abandoned pleading.

 An abandoned pleading generally is not admissible in evidence unless the pleading contains an admission against interest of the pleader. *Countess v. Strunk,* 630 S.W.2d 246, 253 (Mo.App.1982). Although such admissions are not binding on the party, they may be employed for impeachment and are to be weighed by the trier of fact as any other admission would be. *Id.* at 253; *see also, Jimenez v. Broadway Motors, Inc.,* 445 S.W.2d 315, 317 (Mo. 1969). The only basis for receiving an admission against interest into evidence is its inconsistency with the position taken at the trial by the party against whom it is offered. *Howell v. Dowell,* 419 S.W.2d 257, 260 (Mo.App.1967).

Count II of plaintiff's petition is simply not inconsistent with nor does it contradict plaintiff's position at trial.

Plaintiff testified that the Pexto power shear was delivered to defendant's plant and later unloaded and moved it into the plant where it was leveled and bolted down. Once in the shop, plaintiff agreed to move the squaring arm from the left side to the right side of the shear. Plaintiff stated that to do this he would have to remove the arm, take it to his shop and "revamp it so that it would work on the right hand side."

When defendant's employees incorrectly wired the shear causing the motor to run backward and to break and bend parts of the shear, including the engaging lever, plaintiff agreed to repair the shear. Un-

able to locate another engaging lever, plaintiff braced and pinned the broken lever.

Plaintiff's position at trial was consistent with his abandoned pleading and, therefore, the trial court properly rejected the offer of Count II as an admission against plaintiff's interest.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.