# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-1488

_____

| | | |
|---|---|---|
| Anne Sloan; Larry Sloan, | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Motorists Mutual Insurance Company, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 03-1688

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

| | | |
|---|---|---|
| Anne Sloan; Larry Sloan, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Motorists Mutual Insurance Company, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: January 16, 2004

Filed: May 12, 2004

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

These appeals arise out of an action for underinsured motorist (UIM) benefits. Motorists Mutual Insurance Company (MMIC), the UIM carrier, appeals the district court's order denying its motion to offset a $100,000 jury award by $100,000 the tortfeasor paid to settle the underlying negligence claim. Anne and Larry Sloan appeal the district court's order offsetting the verdict by $12,251.53 for medical expenses paid by their personal injury protection insurance. We reverse the district court's denial of MMIC's motion and remand with instructions to offset the jury verdict by $100,000.

I

The Sloans, husband and wife, were insured under an automobile policy issued by MMIC providing UIM coverage. On December 26, 1995, the Sloans were involved in a two-vehicle collision in Arkansas. Anne was injured and settled her negligence claim against the other driver for the tortfeasor's $100,000 insurance limits. Thereafter, she brought this action against MMIC to recover against her $500,000 UIM coverage. Before trial, MMIC moved to exclude any evidence of the settlement between Anne and the tortfeasor. The district court denied the motion and at trial Larry testified the tortfeasor had paid $100,000 to settle the negligence claim.

At the close of the evidence, the jury was instructed,

And then the fifth and sixth verdicts ask for you to determine the amount of damages that you find from a preponderance of the evidence were sustained by Larry Sloan and then the next by Anne Sloan as a result of

the occurrence. And, again, the occurrence being the automobile accident.

Now these are the verdicts that you will be asked to consider. And although this does not directly impact the decision against the insurance company – that is under the coverage – these are the questions that you will be asked to answer, and then I will apply your verdict accordingly and inject my own decision into the case . . . .

Additionally, the jury was given a verdict form telling it to "[s]tate the amount of any damages which you find from a preponderance of the evidence were sustained by Anne Sloan as a result of the occurrence." The jury awarded $100,000.

The district court denied MMIC's post-trial motion to offset the jury award by the settlement amount, concluding the jury had intended to award $100,000 over and above the $100,000 settlement. The district court granted MMIC's motion to offset the verdict by $12,251.53 for medical expenses paid by Anne's personal injury protection insurance. On appeal, MMIC argues the district court erred in refusing to offset the $100,000 damage award by the $100,000 settlement. The Sloans argue the district court erred by reducing the jury award to account for the paid medical expenses.

II

This is a diversity action governed by Arkansas substantive law. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). We review the district court's application of state law de novo. Koch Eng'g Co. v. Gibralter Cas. Co., 78 F.3d 1291, 1294 (8th Cir. 1996).

The district court based its decision to deny the offset on a line of Arkansas cases disallowing an offset in cases involving joint tortfeasors if one or more of them have settled and are disclosed to the jury. See, e.g., Giem v. Williams, 222 S.W.2d

800, 804-05 (Ark. 1949); Arkansas Kraft Corp. v. Johnson, 519 S.W.2d 74, 78-79 (Ark. 1975). In such cases, an offset is disallowed because it is presumed the jury only intended to award damages attributable to the remaining tortfeasor. See Giem, 222 S.W.2d at 804-05; Ark. Kraft Corp., 519 S.W.2d at 78-79. The district court concluded "[a]lthough the above cited cases addressed situations involving joint tortfeasors, the Court finds the reasoning equally applicable here." We disagree.

In Giem and Ark. Kraft Corp., the plaintiffs settled with one tortfeasor and proceeded to trial against a second. 222 S.W.2d at 802; 519 S.W.2d at 76. At trial, the settlements were revealed to the juries. Giem, 222 S.W.2d at 804; Ark. Kraft Corp., 519 S.W.2d at 76. In post-trial motions, both trial courts refused to offset the jury awards because the non-settling tortfeasors had already received the benefit of the settlements. Giem, 222 S.W.2d at 804-05; Ark. Kraft Corp., 519 S.W.2d at 78-79. In other words, the juries knew how much the settling tortfeasors had paid to compensate the plaintiffs and it was presumed the juries reduced the awards against the non-settling tortfeasors accordingly. Giem, 222 S.W.2d at 804-05; Ark. Kraft Corp., 519 S.W.2d at 78-79.

By analogy, it could be argued the jury in this case knew how much the tortfeasor had paid and reduced the total damages awarded to account for the settlement. We question, however, whether the principle enunciated in Giem and Ark. Kraft Corp. can be so readily applied in this context. In cases involving joint tortfeasors, fault must be allocated among the tortfeasors to ensure each pays only its fair share of a plaintiff's damages. Courts, in accomplishing this goal, call upon juries to perform two tasks; first, to determine the total amount of damages, and second to divide responsibility for those damages among the tortfeasors. Giem and Ark. Kraft Corp. merely recognize that if juries know how much one tortfeasor has already paid towards the total damages it is presumed they allocate the remaining damages accordingly. In cases such as this, however, a jury is called upon to perform but one function – to set the total amount of a plaintiff's damages without the need

to allocate them between the tortfeasor and the UIM insurer. Instead, the trial court determines the UIM carrier's responsibility by subtracting the liability limits from the total damage award to determine the extent to which the tortfeasor was underinsured.

Ark. Kraft Corp. is further distinguishable because the jury instruction there was markedly different from the instruction given in this case. 519 S.W.2d at 79 n.3. There the jury was instructed to limit its damage award to "those elements of damages which you find were proximately caused by the negligence of Arkansas Kraft Corporation [the remaining tortfeasor]." Id. Here, the jury was not instructed to limit its award to those damages sustained in excess of $100,000 or to those damages payable by the UIM carrier.

The dissent argues our review of the district court's decision to deny the offset is cabined by the clear error standard of review. The argument, however, overlooks the district court's reliance on Giem and Ark. Kraft Corp. as support for its denial. The district court's extension of Giem and Ark. Kraft Corp. beyond the context of joint tortfeasors is a legal question and subject to our plenary review. Because we conclude the Arkansas Supreme Court would not expand Giem and Ark. Kraft Corp. to the situation presented by this case, see Jackson v. Anchor Packing Co., 994 F.2d 1295, 1301 (8th Cir. 1993) (noting when a state's highest court has not decided an issue it is our task to predict how it would resolve the issue), we reverse the district court's denial of MMIC's motion and remand with instructions to offset the verdict by the $100,000 negligence settlement.

Additionally, the district court's refusal to offset the verdict cannot be upheld because it would require us to ignore the clear language of the jury instruction and verdict form used in this case. The jury was instructed "to determine the amount of damages that you find from a preponderance of the evidence were sustained by . . . Anne Sloan as a result of the . . . automobile accident." Similarly, the verdict form told the jury to "[s]tate the amount of any damages which you find . . . were sustained

by Anne Sloan as a result of the [accident]." Neither the jury instruction nor the verdict form can be read as asking the jury to reduce the award of damages to account for the $100,000 settlement. Rather, both instructed the jury to award a sum representing the damages Anne sustained as a result of the accident without qualification. Absent evidence to the contrary we presume the jury followed the instructions it was given. See Harrison v. Purdy Bros. Trucking Co., 312 F.3d 346, 352 (8th Cir. 2002). Here, there is no evidence the jury's verdict represents anything less than "the damages . . . sustained by Anne Sloan. . . ." Accordingly, the presumption controls.

## III

We reverse the district court's denial of MMIC's motion and remand with instructions to offset the verdict by the $100,000 negligence settlement. Because the offset results in a net verdict of zero, we need not reach the Sloans' appeal.

HEANEY, Circuit Judge, dissenting.

I agree that the majority's interpretation of the jury instructions and the effect of the jury's answers to the district court's interrogatories is a reasonable one. While I further agree that we review the district court's application of state law de novo, Koch Eng'g Co. v. Gibralter Cas. Co., 78 F.3d 1291, 1294 (8th Cir. 1996), we review the district court's determination of the underlying issue–whether the $100,000 verdict was meant to compensate Anne Sloan in addition to her settlement with the tortfeasor–for clear error, Garver & Garver, P.A. v. Little Rock Sanitary & Sewer Comm., 781 S.W.2d 24, 30 (Ark. 1989). I find none here, and would thus not disturb the district court's decision on this matter.

The jury in this case was informed that Sloan had settled with the other driver involved in the auto wreck for $100,000. In such an instance, it is obviously

preferable for the court to instruct the jury in a way that leaves no doubt as to whether the jury award is meant to be paid in addition to the settlement. See, e.g., id, 781 S.W.2d at 29-30 ("Perhaps it would have been better if the instructions or interrogatories had directed the jury to fix the amount of damages after first deducting the settlement amount . . . ."). The district court did not do so here. Instead, it simply asked the jury to state the amount of damages Sloan had sustained, to which the jury answered $100,000. The absence of definitive instructions and interrogatories left the district court and this court in the unfortunate position of trying to ascertain what the jury really meant by its $100,000 award: was it supposed to represent a global damages figure (as the majority suggests), or had the jury already discounted its award by Sloan's earlier settlement (as the district court found)? The question is open to both interpretations, neither of which I find particularly more compelling or likely than the other. I thus cannot say the district court committed clear error in finding the jury award was intended to compensate Sloan beyond her settlement, and would affirm the district court. At the very least, Sloan should be afforded the opportunity for a fair resolution of her claim through a new trial with definitive jury instructions and interrogatories.

_____